1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

10

11

12

13

14

15

| | |
|---|---|
| LEONA M. BOLTON,<br><br>                              Plaintiff,<br><br>     v.<br><br>MICHAEL J. ASTRUE, Commissioner of<br>Social Security Administration,<br><br>                              Defendant. | CASE NO.  C10-5413-RJB-JRC<br><br>REPORT AND RECOMMENDATION<br><br> Noted for February 4, 2011 |

16

17      This matter has been referred to Magistrate Judge J. Richard Creatura pursuant to 28

18   U.S.C. § 636(b)(1) and Local Magistrates Rule MJR 4(a)(4); and, as authorized by Mathews,

19   Secretary of  H.E.W. v. Weber, 423 U.S. 261, 271-72 (1976).  This matter has been fully briefed.

20   (See ECF Nos. 12, 13, 14.)

21      After considering and reviewing the record, the undersigned finds that the Administrative

22   Law Judge erred by failing to consider properly the medical evidence. The opinion by treating

23   physician Dr. Ward that plaintiff requires alterations in posture between sitting, standing and

24   walking, with a maximum of thirty minutes in any one position during a regular workday was

25   rejected improperly and without substantial evidence. The undersigned recommends that this

26   matter be reversed and remanded for further consideration by the Administration.

REPORT AND RECOMMENDATION - 1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

BACKGROUND

Plaintiff was born on January 24, 1969, and has at least a high school education. (Tr. 36-37.) In October, 1991, plaintiff began working as the day manager/bartender at Corner Pocket Tavern. (Tr. 374.) This was work that occasionally required heavy lifting. (Id.) On November 15, 1999, while moving a keg of beer, plaintiff felt a low back "sharp 'snap' with burning pain." (Id.) Plaintiff developed severe progressive pain, radiating from the low back down the lateral thigh into the foot. A MRI performed on January 19, 2000 revealed L3-L4 degenerative disc disease with mild broad-based annular bulge; L4-L5 moderate annular disc bulge with mild central canal narrowing; and slight narrowing of the lateral recesses, more on the left than the right. (Id.)

Dr. Gary A. Ward, M.D., (hereinafter "Dr. Ward"), first evaluated plaintiff on May 26, 2000. (Id.) His assessment was a diagnosis of "lumbosacral strain; L4-5 disc herniation with left lumbar nerve root irritation, most likely L5." (Tr. 374.) Physical therapy improved plaintiff's symptoms, however plaintiff's physical activities exacerbated her symptoms. (Id.)

A MRI conducted on August 8, 2000 revealed L4-5 moderate to large, broad-based disc bulge "slightly greater than that seen on 1/19/00 causing displacement within the lateral recesses bilaterally but greater on the left." (Tr. 375.) On September 14, 2000, plaintiff received an independent medical evaluation, in which it was determined that if plaintiff received two epidural injections without benefit, she should be re-evaluated by her neurosurgeon, Dr. Michael S. Mason (hereinafter "Dr. Mason"). (Id.) Dr. Ward concurred with this assessment. (Id.) Although plaintiff received two epidural injections, she received only "modest and temporary benefit." (Id.) On October 17, 2000, Dr. Mason evaluated plaintiff and opined that surgery was indicated. (Tr. 283-84) On December 6, 2000 a lumbar myelogram was performed, and on

REPORT AND RECOMMENDATION - 2

1

2

December 7, 2000, Dr. Mason performed a lumbar laminectomy (bilateral) on plaintiff.

According to Dr. Ward, "postoperative improvements were modest." (Tr. 375.)

3

4

5

6

7

8

9

10

11

On February 26, 2001, Dr. Ward re-evaluated plaintiff. (Id.) On March 15, 2001, EMG

and reflex study by Dr. Marie Valleroy, M.D. revealed results "consistent with left L5 nerve root

irritation," although the electrophysiological indications were mild. (Id.) On August 3, 2001, Dr.

Ward evaluated plaintiff again. He indicated that plaintiff's work status was sedentary-light, with

the restrictions that she could sit, stand or walk for a maximum of thirty minutes at a time, with a

daily maximum of four hours sitting, three hours standing and two hours walking. (Tr. 377.) On

November 19, 2001, plaintiff had not found a job, in part, due to her father's death and preparing

his home for sale. (Tr. 378.)

12

13

14

15

16

17

18

On April 15, 2002, plaintiff was experiencing "mild, intermittent discomfort [in the] left

lateral thigh, [and the] lateral anterior leg into the dorsum of the foot, [which was] controlled

with Neurontin." (Tr. 362.) Plaintiff also was experiencing "deep low back stiffness [and]

discomfort," along with "transient sharp pain deep [in her] low back when [she] strain[ed]." (Id.)

She reported being "more active with home and yard management," and was "still hoping for

vocational assistance." (Id.)

19

20

21

22

23

24

25

26

On December 31, 2002 Dr. Mason conducted a neurological evaluation. (Tr. 280-82.) Dr.

Mason suggested that further diagnostic tests would be helpful (Tr. 282), but opined that no

operative procedure was indicated at that time. (Tr. 280.) On September 10, 2004, at a pain

clinic, plaintiff was diagnosed with major depressive disorder, generalized anxiety disorder and

sleep disturbance, among other diagnoses. (Tr. 574.) Plaintiff reported a "particularly high level

of involvement in household chores" at this point in time. (Id.)

REPORT AND RECOMMENDATION - 3

1    Approximately around this time, plaintiff's medical evaluations began to reveal the

2    presence of psychological factors potentially affecting her diagnoses. Around this time plaintiff

3    appeared to be experiencing pain that her medical providers were unable to explain. (See, e.g.,

4    Tr. 291, 453, 481.) The difficulties may have been due to complications regarding tolerance to

5    pain medications, (see Tr. 366-67), or to a conversion disorder (see Tr. 472-73, 614, 621). A

6    March 1, 2005 exam indicated a past medical history of depression (Tr. 451), as well as a

7    prescription for Effexor (Tr. 452). However, this evaluation by Dr. Paul L. Jacobsen also

8    indicated that plaintiff's mood was "unremarkable." (Tr. 452.)

9    On July 12, 2005, Dr. John W. Thompson, M.D., (hereinafter "Dr. Thompson"),

10   evaluated plaintiff. (Tr. 460-73.) Plaintiff reported that her back pain was basically what it was

11   before her surgery. (Tr. 461.) Although taking 45 milligrams of oral morphine three times a day,

12   along with other pain medications, plaintiff reported that her medications did not control her

13   pain. (Id.) Dr. Thompson indicated that plaintiff had a self-reported sitting tolerance of about

14   thirty minutes and could walk about thirty minutes. (Id.) Dr. Thompson noted plaintiff's

15   "somewhat bizarre pain description" (Tr. 461), and also noted responses by plaintiff on

16   examination that suggested that she was providing false information and pretending weakness

17   (Tr. 462, 463, 464). Reviewing Dr. Mason's December 31, 2002 report, Dr. Thompson indicated

18   his belief that there potentially "was a voluntary component to her 'weakness.'" (Tr. 465.)

19   On August 25, 2005, Dr. Reed C. Wilson, M.D., (hereinafter "Dr. Wilson"), examined

20   plaintiff. (Tr. 474-83.) Dr. Wilson noted plaintiff's self report that her symptoms are increased by

21   sitting for more than thirty minutes, any sort of physical activity, or by standing or walking for

22   more than fifteen to thirty minutes. (Tr. 479.) However, Dr. Wilson noted on examination that

23   "in spite of" plaintiff's pseudo-paralysis of the left leg, "there is no atrophy of the left leg." (Tr.

REPORT AND RECOMMENDATION - 4

1   480.) Dr. Wilson noted indications on examination which suggested that plaintiff was not

2   attempting to move her leg in response to the examining physician's direction. (Id.) Dr. Wilson

3   also noted "other inconsistencies." (Id.) However, Dr. Wilson ultimately indicated his impression

4   that "I suppose that her pain syndrome is in fact related to the accident-of-record." (Tr. 481.)

5   
6          On March 14, 2006, Dr. Paul M. Puziss, M.D., (hereinafter "Dr. Puziss"), examined

7   plaintiff. (Tr. 603-615.) Dr. Puziss noted plaintiff's restrictions regarding standing, walking or

8   sitting for a half hour at a time, and noted plaintiff's indication that if she remains sitting, her

9   pain increases. (Tr. 605, 610.) Her right verses left measurements for both her calves and thighs

10   were the same (Tr. 612.) Dr. Puziss opined that plaintiff may suffer from conversion disorder,

11   and also indicated that "it is possible that there is a combined condition psychiatrically." (Tr.

12   613.) Finally, Dr. Puziss opined that "I do not view this patient as being capable of returning to

13   regular and gainful employment because of the sum total of her conditions." (Tr. 614.)

14   
15          On December 30, 2005, Mr. Rodney Garrison, PAC, (hereinafter "Mr. Garrison")

16   evaluated plaintiff. (Tr. 636-37.) In May, 2006, Mr. Garrison submitted his opinion that "it

17   would be difficult to see [plaintiff] returning to any gainful employment because of the degree of

18   incapacity and pain that she is continuing to exhibit from her back pain and left leg

19   radiculopathy, along with her left foot drop and left knee weakness." (Tr. 635.)

20          On or about May 12, 2006, Mr. Scott T. Stipe, M.A., (hereinafter "Mr. Stipe")

21   interviewed plaintiff. He noted her limitation regarding alternating between sitting, standing and

22   walking. (Tr. 618.) Mr. Stipe opined that Dr. Ward's limitations would "compromise [plaintiff's]

23   
24   ability to perform clerical types of occupations." (Tr. 620.) Mr. Stipe agreed with "the most

25   recent evaluators" that plaintiff's "ability to be employed is unlikely." (Tr. 621.)

26   

REPORT AND RECOMMENDATION - 5

1

PROCEDURAL HISTORY

2

On November 1, 2004, plaintiff applied for Supplemental Security Income and Disability

3

Insurance Benefits. (Tr. 28.) Plaintiff was denied initially and on reconsideration. (Tr. 48-54.)

4

Plaintiff requested a hearing, which was held on September 13, 2007. (Tr. 28, 797-856.) Plaintiff

5

was found "not disabled" in a January 22, 2008 decision by Administrative Law Judge Timothy

6

C. Terrill, (hereinafter "ALJ Terrill"). (Tr. 28-38.) On April 14, 2010, the Appeals Council

7

denied plaintiff's request for review, making the January 22, 2008 decision the final decision

8

subject to judicial review. (Tr. 7-9.) On June 22, 2010, plaintiff filed the underlying complaint

9

seeking judicial review. (ECF No. 4.) In her opening brief, plaintiff contends that the decision of

10

ALJ Terrill should be reversed because of the following alleged errors:

11

12

    1.  ALJ Terrill failed to evaluate properly the medical evidence.

13

    2.  ALJ Terrill erred in his findings regarding plaintiff's residual functional capacity.

14

    3.  ALJ Terrill erred in finding that that there are a significant number of jobs in the

15

16

        national economy that plaintiff can perform.

17

(ECF Nos. 12, 14.) Plaintiff also contends that plaintiff is entitled to a direct award of benefits.

18

(Id.)

19

STANDARD OF REVIEW

20

Plaintiff bears the burden of proving disability within the meaning of the Social Security

21

Act (hereinafter "the Act"). Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (*citing*

22

Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995)). The Act defines disability as the

23

"inability to engage in any substantial gainful activity" due to a physical or mental impairment

24

"which can be expected to result in death or which has lasted, or can be expected to last for a

25

continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

26

Plaintiff is disabled under the Act only if plaintiff's impairments are of such severity that

1   plaintiff is unable to do previous work, and cannot, considering the plaintiff's age, education, and

2   work experience, engage in any other substantial gainful activity existing in the national

3   economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); see also Tackett v. Apfel, 180 F.3d 1094,

4   1098-99 (9th Cir. 1999).

5

6   Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of

    social security benefits if the ALJ's findings are based on legal error or not supported by
7

8   substantial evidence in the record as a whole. Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th

9   Cir. 2005) (*citing* Tidwell, 161 F.3d at 601). "Substantial evidence" is more than a scintilla, less

10  than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as

11  adequate to support a conclusion.'" Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989)

12  (*quoting* Davis v. Heckler, 868 F.2d 323, 325-26 (9th Cir. 1989)); see Richardson v. Perales, 402

13  U.S. 389, 401 (1971).

14

15                                         DISCUSSION

16      1.      The ALJ failed to evaluate properly the medical evidence.

17  "A treating physician's medical opinion as to the nature and severity of an individual's

18  impairment must be given controlling weight if that opinion is well-supported and not

19  inconsistent with other substantial evidence in the case record." Edlund v. Massanari, 253 F.3d

20  1152, 1157 (9th Cir. 2001) (*citing* SSR 96-2p, 1996 SSR LEXIS 9); see also 20 C.F.R. § 416.902
21
22  (nontreating physician is one without "ongoing treatment relationship"). The ALJ must provide

23  "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or

24  examining physician.  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995) (*citing* Baxter v.

25  Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991); Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir.

26  1990)); see also Edlund v. Massanari, 253 F.3d 1152, 1158-59 (9th Cir. 2001) ("the ALJ erred in

1   failing to meet, either explicitly or implicitly, the standard of clear and convincing reasons

2   required to reject an uncontradicted opinion of an examining psychologist") (*citing* <u>Lester v.</u>

3   <u>Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995)).  Even if a treating or examining physician's opinion is

4   contradicted, that opinion "can only be rejected for specific and legitimate reasons that are

5   supported by substantial evidence in the record." <u>Lester</u>, 81 F.3d at 830-31 (*citing* <u>Andrews v.</u>

6   <u>Shalala</u>, 53 F.3d 1035, 1043 (9th Cir. 1995)). In addition, the ALJ must explain why his own

7   interpretations, rather than those of the doctors, are correct. <u>Reddick</u>, 157 F.3d at 831 (*citing*

8   <u>Embrey v. Bowen</u>, 849 F.2d 418, 421-22 (9th Cir. 1988)).

9

10       An examining physician's opinion is "entitled to greater weight than the opinion of a

11   nonexamining physician." <u>Lester</u>, 81 F.3d at 830 (citations omitted); <u>see also</u> 20 C.R.R. §

12   404.1527(d).  A non-examining physician's opinion may not constitute substantial evidence by

13   itself. <u>Lester</u>, 81 F.3d at 831.

14

15       Dr. Ward was a treating physician and his opinion already has been discussed. <u>See</u> <u>supra</u>,

16   pp. 2-3. Although ALJ Terrill gave Dr. Ward's opinion "significant weight," he rejected Dr.

17   Ward's opinion that plaintiff was restricted to sitting, standing or walking for a maximum of

18   thirty minutes at a time, with a daily maximum of four hours sitting, three hours standing and

19   two hours walking in an eight hour work day. (Tr. 34, 377.) In support of his rejection of Dr.

20   Ward's opinion regarding plaintiff's functional limitations, ALJ Terrill stated that "[s]ubsequent

21   evaluations generally reflect a capacity for sedentary work with no indication of a need for

22   position changes." (Tr. 34.) Dr. Thompson was an examining physician and his opinion already

23   has been discussed. <u>See</u> <u>supra</u>, p. 4. Dr. Thompson also indicated that "[f]rom an objective

24   standpoint, she probably could do sedentary type work. Psychologically, however, I doubt if this

25   woman is ever going to see herself as being able to return to the workforce." (Tr. 473.) Although

26

REPORT AND RECOMMENDATION - 8

1   Dr. Thompson indicates that plaintiff "probably" could do sedentary *type* of work, he does not

2   address explicitly any disagreement with Dr. Ward's assessment regarding plaintiff's limitations

3   with respect to standing, sitting or walking for a maximum of thirty minutes at a time.

4
    Dr. Puziss was an examining physician and his opinion already has been discussed. See

5   supra, p. 5. Dr. Puziss also opined that "[i]n terms of her back, she is *probably* capable of

6   theoretical sedentary work and, objectively regarding the left leg, of medium work, but

7
    realistically the combination of the two probably makes her unemployable at this point." (Tr. 614

8   (emphasis added).) Dr. Puziss opined that plaintiff "probably" was capable of "theoretical"

9
10  sedentary work. However, Dr. Puziss noted plaintiff's restrictions regarding standing, walking or

11  sitting for a half hour at a time, and noted plaintiff's indication that if she remains sitting, her

12  pain increases. (Tr. 605, 610). In a similar fashion to Dr. Thompson, Dr. Puziss does not dispute

13
14  Dr. Ward's assessment regarding plaintiff's postural limitations explicitly. In addition, Dr. Puziss

15  opined that "I do not view this patient as being capable of returning to regular and gainful

16  employment because of the sum total of her conditions." (Tr. 614.)

17  Finally, the non-examining state agency medical consultants found plaintiff capable of

18  sedentary work. (Tr. 491). Although the report by the consultants reflects that plaintiff "says that

19  she can walk for 45 min., sit for 45 min., [and] stand still for 45 min." (Tr. 491), the report

20
21  contains the opinion that plaintiff can sit with only normal breaks for six hours in an eight hour

22  work day (Tr. 485). The medical consultants do not provide any explanation for this discrepancy.

23  The Court concludes that ALJ Terrill's reasons for his rejection of the opinion by treating

24  physician Dr. Ward that plaintiff was restricted to sitting, standing or walking for a maximum of

25  thirty minutes at a time, with a daily maximum of four hours sitting, three hours standing and

26  two hours walking in an eight hour work day, are not supported by substantial evidence in the

REPORT AND RECOMMENDATION - 9

1  record. Lester, 81 F.3d at 830-31 (see also Tr. 34, 377). Two of the three opinions which indicate

2  that plaintiff *probably* can perform *some type of* sedentary work also contain the conclusion that

3  plaintiff probably is unemployable. (Tr. 473, 614.) The third opinion containing such an

4  indication is provided by the non-examining medical consultants. Not one of these opinions by

5  the examining physicians or the non-examining medical consultants provides any explanation for

6  the conclusion which contradicts the opinion of treating physician Dr. Ward. For these reasons,

7  the decision by ALJ Terrill should be reversed and remanded for further consideration by the

8  Administration.

9  

10      2.      On remand, the ALJ should reconsider plaintiff's residual functional capacity and

11              whether or not there are jobs in the national economy plaintiff can perform.

12  Although plaintiff contends that the ALJ erred in his findings regarding plaintiff's

13  residual functional capacity, as this case should be remanded to the Administration, the ALJ

14  should be allowed an opportunity to reconsider the medical evidence and to incorporate the

15  properly reconsidered medical evidence into the determination regarding plaintiff's residual

16  functional capacity. Likewise, the ALJ should be allowed an opportunity to evaluate anew the

17  determination regarding whether or not there are jobs in the national economy plaintiff can

18  perform.

19      3.      It is not appropriate to remand with a direction to award plaintiff benefits.

20  The Ninth Circuit has established a "test for determining when evidence should be

21  credited and an immediate award of benefits directed." Harman v. Apfel, 211 F.3d 1172,

22  1178 (9th Cir. 2000). It is appropriate where:

23  

24          (1) the ALJ has failed to provide legally sufficient reasons for
            rejecting such evidence, (2) there are no outstanding issues that must
25          be resolved before a determination of disability can be made, and (3)
            it is clear from the record that the ALJ would be required to find the
26          claimant disabled were such evidence credited.

REPORT AND RECOMMENDATION - 10

1
2
3
4
5
6

Harman, 211 F.3d at 1178 (*quoting* Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir.1996)).

Here, outstanding issues must be resolved. See Smolen, 80 F.3d at 1292. There is a large volume of medical evidence and the record contains contradictions. Some of these contradictions have been discussed by the ALJ in his decision. (Tr. 31-36.) In addition, the medical opinion evidence contains ambiguities and conflicts.

7
8
9
10
11
12
13
14

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence.  Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998); Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995).  If the medical evidence in the record is not conclusive, sole responsibility for resolving conflicting testimony and questions of credibility lies with the ALJ.  Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1999) (*quoting* Waters v. Gardner, 452 F.2d 855, 858 n.7 (9th Cir. 1971) (*citing* Calhoun v. Bailar, 626 F.2d 145, 150 (9th Cir. 1980))).

15
16
17
18
19
20

Therefore, remand is appropriate to allow the Administration the opportunity to consider properly all of the medical evidence as a whole and to incorporate the properly considered medical evidence into the consideration of plaintiff's residual functional capacity. See Sample, 694 F.2d at 642. Remanding the matter will allow the Administration the opportunity also to reconsider its decisions at steps four and five of the sequential disability evaluation.

21

## CONCLUSION

22
23
24
25
26

On remand, the ALJ should consider properly the medical evidence, which may affect the ALJ's findings regarding plaintiff's residual functional capacity as well as findings at steps four and five of the sequential disability evaluation. Therefore, for the aforestated reasons, the Court should reverse and remand the matter to the Administration for further consideration, beginning

1   at the determination of plaintiff's residual functional capacity, followed by new findings at steps

2   four and five of the sequential disability evaluation.

3          Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

4   fourteen (14) days from service of this Report to file written objections.  See also Fed. R. Civ. P.

5   6.  Failure to file objections will result in a waiver of those objections for purposes of de novo

6   review by the district judge. See 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit

7   imposed by Rule 72(b), the clerk is directed to set the matter for consideration on February 4,

8

9   2011, as noted in the caption.

10         Dated this 13th day of January, 2011.

11

12

13   J. Richard Creatura
     United States Magistrate Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

REPORT AND RECOMMENDATION - 12